SCHULENBERG-BOECKELER LUMBER Co. and others *v.* TOWN OF HAYWARD and others.

C. N. NELSON LUMBER Co. and another *v.* TOWN OF LORRAINE and another.

*(Circuit Court, W. D. Wisconsin. March, 1884.)*

1. COLLECTION OF TAXES—INJUNCTION TO RESTRAIN—JURISDICTION OF UNITED STATES COURTS—HOW ESTABLISHED.
    In order to enable a federal court to enjoin the collection of state, county, and municipal taxes, it must proceed upon clear and established principles of equity jurisdiction.
2. EQUITY—INTERFERENCE OF, TO PREVENT MULTIPLICITY OF SUITS—IRREPARABLE INJURY—CLOUD ON TITLE.
    Equity will not interfere except in special cases, as of fraud, to save a multiplicity of suits, or prevent irreparable injury, or a cloud upon title to land.
3. JURISDICTION—NOT CONFERRED BY JOINDER OF CLAIMS INSUFFICIENT IN AMOUNT TO LARGE ONES.
    When claims are not of sufficient amount to give a court jurisdiction if suits are severally brought, a court will not gain jurisdiction by joining them with other claims sufficient in amount. Courts of equity cannot wrest jurisdiction from courts of law because there is more than one plaintiff severally interested in a controversy.
4. MULTIPLICITY OF SUITS.
    Many actions by different plaintiffs, when an action at law will settle a controversy as to each, is not what is intended by a multiplicity of suits.
5. EQUITY—MULTIPLICITY OF SUITS—PARTIES CANNOT BASE RIGHTS ON RIGHTS OF THIRD PERSONS.
    Where no one of a number of complainants stands in danger of a multiplicity of suits, they cannot complain that a third person must have a suit in order to obtain his legal rights.
6. TAXES—UNJUST ASSESSMENT—REMEDY AT LAW.
    Where a tax is unjustly assessed, a complainant has an adequate remedy at law by paying the tax and suing to recover the amount so paid.

In Equity.

*Clapp & Macartney,* for complainants. *I. N. & J. W. Castle* and *Fayette Marsh,* of counsel.

*Marshall & Jenkins,* for defendants. *Gregory & Gregory,* of counsel.

BUNN, J. These cases are brought by complainants, being natural persons and corporations, citizens of Minnesota and Missouri,—one against the town of Hayward, in Sawyer county, and one against the town of Lorraine, in Polk county, Wisconsin,—to obtain a perpetual

injunction restraining the collection of the general state, county, and town taxes for the year 1883 upon a large quantity of saw-logs belonging, severally, to the complainants, cut in the winter of 1882–83, in said towns, from the complainants' lands lying therein, and banked upon the Namacogin river, in said town of Hayward, in Sawyer county, and upon the Clam river, in said town of Lorraine, in Polk county. The complainants, having filed their bills of complaint, now move the court thereupon for an injunction, pending the litigation, to restrain the town officers from levying upon the personal property of the complainants, situate in said towns, for the satisfaction of said taxes. The claim made by complainants is this: That they are non-residents of the state of Wisconsin, and are the owners in severalty of large quantities of timbered lands in the counties named, valuable, principally, for the pine timber growing thereon; that during the winter of 1882–83 they caused to be cut upon said lands large quantities of pine logs, with the sole purpose and intent of running them out through the navigable streams of the state into the St. Croix river, and thence to the city of Stillwater, Minnesota, to be manufactured into lumber for market in that and other states west of the Mississippi; that with this view they cut and hauled said logs to said rivers, which were navigable streams, and there rolled them down between the two banks of said rivers, upon the ice thereof, to await high water in the spring, whereby they could and did, in the month of May, 1883, run them down into the St. Croix river to Stillwater, in the state of Minnesota; that while the logs were there banked in the said stream, and upon the ice thereof, awaiting shipment, the assessors of said towns, in the month of April, levied these taxes upon them; that such logs were not subject to taxation in the towns where they were so cut and assessed, (1) because they had no *situs* in the state of Wisconsin, but had then become and were the subject of commerce, and in transit from one state of the Union to another, and were exempt from taxation by reason of the provision in the United States constitution giving congress the power to regulate commerce with foreign powers and between the several states; and (2) because the law of Wisconsin which authorizes the taxation is repugnant to the constitution of Wisconsin, which provides a uniform rule of taxation, and makes an unjust discrimination against non-residents of the town.

It will be evident, from this brief statement of the complainants' case, that the questions involved are of grave importance to the state and to holders of pine lands. There is also a question of jurisdiction in the case almost as important, and which it will be essential first to consider.

In order to enable this court to tie up the hands of the local state authorities, and stay the collection of the ordinary state, county, and municipal taxes, it must proceed upon clear and established principles of equity jurisdiction. By the law of congress (see section 3224,

Rev. St.) neither a federal nor state court has any power in any case to stay by injunction the collection of a United States tax. The language of the provision is broad enough, indeed, to cover the case of any tax, national or state. But although the provision no doubt applies only to taxes levied by the general government, it serves to show the temper and attitude of the government upon the general question. The reasons are quite as strong against the national courts interfering to stay the collection of state taxes as they are against allowing any court, state or federal, to interfere to stay the collection of the national revenues. And, consequently, we see that the United States courts have ever shown the greatest caution and reluctance in entertaining jurisdiction in such a case, and will always refrain from taking jurisdiction except when the complaint makes a case free from doubt, and under some well-recognized head of equity. The jurisdiction is claimed in this case chiefly on the ground of preventing a multiplicity of suits. But I am of the opinion that this principle is not applicable here.

In the first of the above-entitled cases there are eight complainants, some of them corporations and some of them natural persons, citizens of Minnesota and Missouri. They are all severally interested in the subject-matter of the suit; and as to six out of the eight, their claims amount to less than $500. In the other, one of the two complainants has a claim of less than that sum. I think it clear that those whose claims are not of such an amount as to give the court jurisdiction if their suits had been severally brought, cannot, by joining with others whose claims exceed $500, give this court jurisdiction of those cases. See *King* v. *Wilson*, 1 Dill. 555; *Adams* v. *Board of Com'rs*, McCahon, 235; 2 Abb. Pr. (N. S.) 12; *Township of Bernards* v. *Stebbins*, 3 Sup. Ct. Rep. 252, and cases cited. This leaves two complainants in one case and one in the other; certainly not a very formidable exhibit, so far as numbers are concerned, to bring the case within the principle contended for, allowing that they can so join together. But can they so join? Their interests are, in every important sense, several. There is no unity or community of interest between them as regards the subject-matter of the suit. They but have a common interest in the law of the case, which is not enough. If they brought actions at law they could not join. I think it quite as clear that they cannot join in equity.

If the town authorities were attempting to levy a tax unauthorized by law, all property owners would have a common interest and be affected alike. They might join, or one or more might sue for themselves and all others similarly situated, and one suit in equity might determine the whole controversy. But here is no complaint that the tax is not legal. The gist of the complaint is that the assessor has extended it against property not subject to assessment. Each complainant must make his own case upon the facts. One might succeed and another fail. I know of no case, and have been referred to none,

in which persons so severally interested have been permitted to join in either a legal or equitable suit, and to allow it would be to confound the established order of judicial proceeding, and lead to interminable confusion and embarrassment.   Courts of equity cannot wrest jurisdiction from the courts of law because there is more than one plaintiff severally interested in the controversy; and many actions by different plaintiffs, where one action at law will settle the controversy as to each, is not what is intended by a multiplicity of suits.   Here, no one of the plaintiffs would have any interest in any suit brought by another, and no one can complain because others are compelled to sue, inasmuch as he could not be called upon to share either in the vexation or expense.   No one of the complainants stands in any danger of a multiplicity of suits affecting himself, and he cannot complain that some other person must have a suit in order to obtain that other person's legal rights.   These cases come within the principle of *Cutting* v. *Gilbert*, decided by Judge NELSON, in 5 Blatchf. 259   *Dodd* v. *City of Hartford*, 25 Conn. 232; *Youngblood* v. *Sexton*, 32 Mich. 406; and *Barnes* v. *City of Beloit*, 19 Wis. 93.

It was contended by counsel on the argument that, as the state law forbids the bringing of replevin against the tax collector, there is no adequate remedy at law.   I cannot concur in this view.   The complainants have an adequate remedy at law in paying the tax demanded, and suing the town to recover it back.   I am aware that some of the state courts, particularly in Illinois, have gone a considerable way in the direction of allowing an injunction to restrain the collection of a tax.   But we have seen, and may see further by a reference to the decisions, what is the attitude of the general government, legislative and judicial, upon this subject.   And the general doctrine holds good by the weight of authority, state and national, that equity will not interfere except in special cases, as of fraud, to save a multiplicity of suits, or prevent irreparable injury, or a cloud upon title to land.   See *Dows* v. *City of Chicago*, 11 Wall. 108; *Hannewinkle* v. *Georgetown*, 15 Wall. 548; *Cummings* v. *Nat. Bank*, 101 U. S. 153; *State Railroad Tax Cases*, 92 U. S. 575; High, Inj. § 496; *Van Cott* v. *Sup'rs of Milwaukee*, 18 Wis. 247; *Cramer* v. *Sup'rs of Milwaukee*, Id. 257; *Mills* v. *Gleason*, 11 Wis. 470; *Quinney* v. *Town of Stockbridge*, 33 Wis. 505; *Brewer* v. *Springfield*, 97 Mass. 152; Cooley, Tax'n, 538.

In the judgment of the court this case comes fairly within the principle of *Dows* v. *Chicago*, 11 Wall. 108, and should be ruled by that case.   And though the court in *Cummings* v. *The Bank*, 101 U. S. 157 use language which might, taken apart from any particular state of facts, seem to approve a somewhat broader rule, it will be considered that what was said was with reference to the facts then before the court, which facts brought the case within the principle of taking jurisdiction to prevent a multiplicity of suits.   The case of *Dows* v. *City of Chicago* is affirmed in *State Railroad Cases, supra*, and the

doctrine of the case has never been disturbed nor questioned in any court of the United States.

For these reasons the motions must be denied and the complainants' bills dismissed. And as these questions of jurisdiction dispose of the case, it will not be necessary or proper to express any opinion upon the merits of the legal questions presented by the bills, though very ably and exhaustively discussed upon the argument.